UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEISHA MULFORT,

    Plaintiff,

v.                                          CASE NO.: 6:24-cv-1118-JSS-EJK

STATE OF FLORIDA –
OFFICE OF THE STATE
ATTORNEY FOR THE
NINTH JUDICIAL CIRCUIT,
and ANDREW A. BAIN,
in his official capacity
as State Attorney,

    Defendants.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

"[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case . . . ." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009). Despite these principles, Defendants unilaterally convert their motion to dismiss into a motion for summary judgment by referencing documents and details that have not been incorporated in the amended complaint and are not subject to judicial notice. The factual allegations, standing alone, are legally sufficient; therefore, Defendants' motion should be denied.

1

## MEMORANDUM OF LAW

**Legal Standard**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Serian v. Jetblue Airways Corp.*, No. 6:23-CV-2471-JSS-LHP, 2024 WL 3377797, at *5 (M.D. Fla. July 11, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**Extraneous Information**

Generally, it is not proper to "consider anything beyond the face of the complaint and documents attached thereto when considering a motion to

2

dismiss." *Edwards v. Dothan City Sch.*, 82 F.4th 1306, 1311 (11th Cir. 2023) (citation omitted).

Exceptions, unsurprisingly, exist. "Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker v. City of Madison, Alabama*, 67 F. 4th 1268, 1276 (11th Cir. 2023) (internal quotation marks and citations omitted). Additionally, judicial notice may be taken of public records without converting a motion to dismiss into a motion for summary judgment. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citations omitted).

Neither the incorporation-by-reference doctrine or judicial notice exception, however, has completely been met here. While Mulfort mentions the termination letter from Defendant Bain, (Doc. 9; ¶ 38), this is the only document that she explicitly references that has been included in Defendants' attachments—and it does not negate her claims. Further, the EEOC documents are not public records subject to judicial notice.[1] But even if the Court determines otherwise, they still cannot be considered. Apart from the termination letter, the remaining documents

---

[1] *See https://www.eeoc.gov/foia/questions-and-answers-foia-requests-charge-files* ("8.  Are co-workers able to get a copy of the charge file under the FOIA? No. Only the Charging Party and Respondent may obtain copies of the charge file, and only if certain requirements are met. Your charge file will not be disclosed to third parties.").

3

are not central to Mulfort's claims. *See Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014) (explaining that "[u]nder appropriate circumstances, a court may take judicial notice of and consider documents attached to a motion to dismiss or response, which are public records that are "central" to a plaintiff's claims . . . ."). Because these exceptions are inapplicable, Exhibit A attached to Defendants' motion should not be considered when evaluating the sufficiency of Plaintiff's claims.[2]

**Similarity of Claims**

Defendants imply that overlap of factual allegations and remedies between claims warrant dismissal. (Doc. 16 ¶¶ 6-7, 13-15). "However, a plaintiff's duplication of a claim made elsewhere in her complaint is not a legal reason to dismiss under Rule 12(b)(6)." *Cortese v. Terrace of St. Cloud, LLC*, No. 615-cv-2009-Orl-40DAB, 2016 WL 1618069, at *2 (M.D. Fla. Apr. 22, 2016) (citing *Wichael v. Wal-Mart Stores E., LP*, No. 6:14-cv-579-Orl-40DAB, 2014 WL 5502442, at *2 (M.D. Fla. Oct. 30, 2014) ("[M]otions to dismiss made under Rule 12(b)(6) only test the validity of a claim, not its redundancy; a redundant claim should not be dismissed as long as it is valid.")).

**FMLA Claims**

Claims against Defendant Bain in his official capacity as State Attorney (Count III FMLA Interference – Self-Care and Count IV FMLA Retaliation – Self

---

[2] Plaintiff will not specifically address Exhibit A since Plaintiff's position is that the documents are not properly before the Court. Plaintiff solely focuses on the allegations in the amended complaint in accordance with the legal standards mentioned above.

4

Care) are not barred by sovereign immunity. Mulfort elected to use the exception articulated in *Ex Parte Young*, 209 U.S. 123 (1908), which allows "suit in federal court against a state official if the plaintiff seeks only '*prospective* equitable relief to end *continuing* violations of federal law.'" *Johnson v. Madden*, No. 3:22CV17910-MCR-HTC, 2023 WL 4060180, at *2 (N.D. Fla. June 19, 2023) *(*quoting *Summit Med. Assocs., P.C. v. Pryor*, 80 F.3d 1326, 1336 (11th Cir. 1999) (alteration in original)). Requests for reinstatement, which Mulfort is seeking in Counts III and IV, "constitute prospective injunctive relief that fall within the scope of the *Ex Parte Young* exception and, thus, are not barred by the Eleventh Amendment". *Lane v. Cent. Alabama Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014).

**FMLA Interference Claims**

A properly pled FMLA interference claim includes three elements: "First, [Mulfort] must show that she was entitled to a benefit under the FMLA. Second, she must show that her employer denied her that benefit. And finally, she must demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023) (citations and quotation marks omitted). Defendant points to the absence of facts establishing disparate treatment (Doc. 16 at 10), but disparate treatment is not an element of an FMLA interference claim. *See de Bello v. Alutiiq, LLC*, No. 8:22-CV-2903-WFJ-JSS, 2023 WL 5042951, at *4 (M.D. Fla. Aug. 8, 2023) (explaining that unlike FMLA retaliation

5

claims, an FMLA interference claim does not require a causal link or a showing of impermissible retaliatory or discriminatory animus) (citations omitted). Mulfort has plausibly alleged FMLA interference claims under Counts I and III.

**Count I – FMLA Interference – Family Care (Against Defendant State Attorney's Office)**

Mulfort was entitled to a benefit under the FMLA. Specifically, she was eligible and utilizing leave for the birth and care of her daughter. (Doc. 9 ¶¶ 7, 9, 22, 24, 25, 41). Eligible employees are entitled to a total of 12 workweeks of "leave during any 12-month period … [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A).

Second, Defendant denied her this benefit in two ways: Initially, Defendant interfered with Mulfort's right to be free from work-related activities. "An employer violates the FMLA by requiring an employee to perform work during FMLA leave." *Griffin v. Sun N' Lake of Sebring Improvement Dist.*, No. 2:16-CV-14062, 2017 WL 3835878, at *10 (S.D. Fla. Mar. 23, 2017) (quoting *Simmons v. Indian Rivers Mental Health Center*, 652 Fed. Appx. 809, 818 (11th Cir. 2016)). Defendant made repeated requests, via phone and e-mail, demanding work-related information, which escalated to Defendant's representatives showing up at Mulfort's home again demanding work-related information. (Doc. 9; ¶¶ 31-33, 35-37, 42). Defendant then interfered with Mulfort's right to utilize all of the leave that she was entitled to. *See* 29 U.S.C. § 2612(a)(1)(A); (Doc. 9 ¶ 42).

And finally, Mulfort suffered harm—Defendant terminated her employment while she was on leave under the FMLA. (Doc. 9; ¶¶ 35-38, 42).

### Count III – FMLA Interference – Self Care (Against Defendant Bain in his official capacity as State Attorney)

Mulfort was entitled to a benefit under the FMLA. Specifically, she was eligible for and requested leave after she was diagnosed with post-partem depression, a serious health condition within the meaning of the FMLA. (Doc. 9 ¶¶ 8, 9, 26, 29, 52). Eligible employees are entitled to a total of 12 workweeks of "leave during any 12-month period … [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

Second, Defendant denied her the benefit of leave for her own serious health condition, s*ee* 29 U.S.C. § 2612(a)(1)(D), since at the time of her request she had not exhausted all leave under the FMLA. (Doc 9; ¶¶ 25-26, 53).

And finally, Mulfort suffered harm—she was terminated shortly after she requested leave. (Doc. 9; ¶¶ 35-38, 53).

### FMLA Retaliation Claims

To state a prima facie case of FMLA retaliation, Mulfort must show that: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269,

7

1275 (11th Cir. 2012) (citations omitted). Mulfort's FMLA retaliation claims, Counts II and IV, are properly pled.

**Count II – FMLA Retaliation – Family Care Against Defendant State Attorney's Office**

(1) In early August 2023, Mulfort engaged in protected activity by objecting to Defendant interfering with her right to be free from work-related activities and refusing to perform work-related activities while on leave under the FMLA. (Doc. 9; ¶¶ 31-36, 47). As mentioned above, "[a]n employer violates the FMLA by requiring an employee to perform work during FMLA leave." *Griffin*, 2017 WL 3835878, at *10 (quoting *Simmons v. Indian Rivers Mental Health Center*, 652 Fed. Appx. 809, 818 (11th Cir. 2016)).

(2) Defendant terminated her employment effective August 9, 2023, which "is an ultimate employment action that is undeniably adverse." *Freytes-Torres v. City of Sanford,* 270 F. App'x 885, 894 (11th Cir. 2008); (Doc. 9; ¶¶ 35-38, 48).

(3) Defendant retaliated against Mulfort for engaging in protected activity by terminating her employment. (Doc. 9; ¶ 48). "Causation can be inferred if Plaintiff shows 'close temporal proximity between the statutorily protected activity and the adverse employment action.'" *Serian v. Jetblue Airways Corp.*,[3] No. 6:23-

---

[3] This case involved allegations of retaliation under Title VII and the ADA. The Court noted the retaliation provisions were similar and both claims were subject to but-for causation. The causation analysis under Title VII and ADA retaliation claims apply to FMLA retaliation claims, which are also subject to but-for causation. *See Lapham v. Walgreen Co.*, 88 F. 4th 879, 893 (11th Cir. 2023) (holding that the proper causation standard for FMLA retaliation claims is but-for causation).

CV-2471-JSS-LHP, 2024 WL 3377797, at *5 (M.D. Fla. July 11, 2024) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

Here, the close temporal proximity between the protected activity and the termination—both events occurring at the beginning of August 2023—raises the reasonable inference of a causal connection. This time frame is "very close," falling well within the temporal proximity window approved by the Eleventh Circuit and Supreme Court. *See Thomas*, 506 F.3d at 1364 (holding that in a Title VII retaliation claim, a three-month gap between protected activity and termination, without more, was not "very close") (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Defendants acknowledge that close temporal proximity can establish a causal connection but mistakenly believe the inference is defeated due to an intervening factor, the appointment of Defendant Bain, and his apparent personal motivations for terminating Mulfort. (Doc. 16 at 19-20). This consideration is improper since Defendants are asking the Court to weigh details outside of the four corners of the pleading, which is not the purpose of a motion to dismiss. *See Am. Int'l Specialty Lines Ins. Co.*, 2009 WL 10671157, at *2.

**Count IV – FMLA Retaliation – Self-Care Against Defendant Bain**

(1) In early August 2023, Mulfort engaged in protected activity by requesting leave for her own serious health condition, post-partum depression. (Doc. 9; ¶¶ 26, 29, 57, 58). "An employee engages in protected activity under the FMLA, if he requests time off, or otherwise provides notice to his employer of his need to take

9

time off, for a serious health condition." *Wood v. Gilman Bldg. Prod. Inc*, 769 F. App'x 796, 802 (11th Cir. 2019) (quotation marks and citation omitted).

(2) Shortly thereafter, she was terminated effective August 9, 2023 (Doc. 9; ¶¶ 35-38, 59), which is undeniably an adverse employment action. *See Freytes-Torres*, 270 F. App'x at 894. (3) Lastly, Defendant retaliated against Mulfort for engaging in protected activity by terminating her employment. (Doc. 9; ¶ 59). The close temporal proximity between her request for leave and the termination—both events occurring at the beginning of August 2023—is very close and raises the reasonable inference of a causal connection. *See Thomas*, 506 F.3d at 1364.

## FCRA Claims Against Defendant State Attorney's Office

For Counts V (Handicap Discrimination), VI (Retaliation), & VIII (Sex Discrimination) under the Florida Civil Rights Act, Mulfort agrees to dismiss these claims without prejudice and refile in state court.

**Count VII – ADA Retaliation (Against Defendant State Attorney's Office)**

Whether a stand-alone Title V retaliation claim can be brought under the Americans with Disabilities Act is an issue of first impression. Defendant argues sovereign immunity bars Count VII, but the Eleventh Circuit left this question open in *Dupree v. Owens,* stating that it "need not decide whether sovereign immunity attaches to a standalone Title V claim or one where the alleged underlying violation occurs under another title." 92 F. 4th 999, 1007 (11th Cir. 2024). Mulfort's stand-

10

alone retaliation claim eliminates the concerns articulated by the Eleventh Circuit in *Dupree* because it is not tied to Title I of the ADA.

To establish an ADA retaliation claim, Mulfort must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection. *Schmidt v. Disney Parks, Experiences & Prod., Inc.*, No. 6:23-CV-257-ACC-EJK, 2024 WL 1669815, at *11 (M.D. Fla. Feb. 29, 2024) (quotation marks and citations omitted). Mulfort plausibly alleges retaliation in violation of the ADA.

(1) In early August 2023, Mulfort engaged in protected activity by requesting a reasonable accommodation in the form of leave following her post-partum depression diagnosis. (Doc. 9; ¶¶ 26, 29, 77). "An employee participates in protected expression . . . when he makes a request for a reasonable accommodation." *Oirya v. Mando Am. Corp.*, No. 23-11429, 2024 WL 1462500, at *7 (11th Cir. Apr. 4, 2024) (citations omitted).

(2) Shortly thereafter, she was terminated effective August 9, 2023, (Doc. 9; ¶¶ 35-38, 79), which is undeniably an adverse employment action. *See Freytes-Torres*, 270 F. App'x at 894.

(3) Lastly, Defendant retaliated against Mulfort for engaging in protected activity by terminating her employment shortly after she requested leave. (Doc. 9; ¶¶ 35-38, 79). The close temporal proximity between the protected activity and the termination—both events occurring at the beginning of August 2023—is very close and raises the reasonable inference of a causal connection. *See Thomas*, 506 F.3d at 1364.

**Count IX—Title VII Violation (Sex Discrimination) (Against Defendant State Attorney's Office)**

"The Pregnancy Discrimination Act amended Title VII to provide that Discrimination on the basis of sex includes discrimination 'on the basis of pregnancy, childbirth or related medical conditions.'" *Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012) (quoting 42 U.S.C. § 2000e(k)). Defendant maintains that Mulfort is not protected by Title VII because she was not pregnant when the adverse action occurred, Doc. 16 at 15, but the statute is not so narrow. "The PDA'[s] plain language indicates that not all claimants must be pregnant to establish a prima facie case." *Jolley v. Phillips Educ. Grp. of Cent. Fla., Inc.*, No. 95-147-CIV-ORL-22, 1996 WL 529202, at *3 (M.D. Fla. July 3, 1996).

Although an evidentiary standard and not a pleading requirement under *Iqbal* and *Twombly,* Mulfort establishes a claim under Title VII using the *McDonnell Douglas* framework. *See Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) ("It may be true that a plaintiff who alleges sufficient facts to establish a prima facie case under *McDonnell Douglas* will *a fortiori* survive a motion to dismiss, because *McDonnell Douglas* requires all the elements of a fully stated claim, and more.").

"To prevail on a claim for discrimination under Title VII based on circumstantial evidence, [Mulfort] must show that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her]

protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted)).

Mulfort satisfies this framework. (1) She was pregnant and subsequently gave birth to her daughter; therefore, she was a member of a protected class. (Doc. 9; ¶¶ 22-25, 88). (2) Mulfort performed her job duties in a satisfactory manner. (Doc. 9; ¶ 21). Construed in the light most favorable to Mulfort, this allegation raises a reasonable inference that she was qualified for her position. (3) Mulfort suffered from an adverse employment action—she was terminated while on maternity leave following the birth of her daughter. (Doc. 9; ¶¶ 25, 35-38, 89). (4) Lastly, she was replaced by a person outside of her protected class, a non-pregnant female. (Doc. 9; ¶ 39).

**Count X – PWFA Retaliation Against Defendant State Attorney's Office**

The Pregnant Workers Fairness Act requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 2000gg-1(1). The statute also includes a prohibition on retaliation, the provision Mulfort is proceeding under—not 42 U.S.C. § 2000gg-2(f)(1) which Defendant cites as the source of the pleading deficiency. The retaliation provision prohibits a covered

13

entity like Defendant (Doc. 9 ¶ 14) from "tak[ing] adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5)

Mulfort's allegations are sufficient to raise a reasonable inference of retaliation under the PWFA: She was diagnosed with a medical condition, post-partum depression, which was related to, affected by, or arose out of the birth of her child. (Doc. 9; ¶¶ 26, 29, 93). Additionally, she was a qualified employee. (Doc. 9; ¶ 28). In early August 2023, Mulfort requested leave—a reasonable accommodation[4]—and was then terminated effective August 9, 2023, in retaliation for her request. (Doc. 9; ¶¶ 26, 29, 35-38, 93-95). Like the other retaliation claims, the close temporal proximity between the protected activity and the termination—both events occurring at the beginning of August 2023—is very close and raises the reasonable inference of a causal connection.[5] *See Thomas*, 506 F.3d at 1364.

---

[4] A reasonable accommodation under the PWFA is construed in conformity with the ADA, *see* 42 U.S.C. § 2000gg(7), and leave can be a reasonable accommodation under the ADA. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (explaining that a "leave of absence might be a reasonable accommodation in some cases.").

[5] Because the provision at issue here, 42 U.S.C. § 2000gg-1(5) uses "on account of" language, which is synonymous with the phrase "because of," it is likely that but-for causation will apply. *See Lapham v. Walgreen Co.*, 88 F.4th 879, 891 (11th Cir. 2023).

14

**Count XI – Rehabilitation Act (Disability Discrimination) Against Defendant State Attorney's Office**

"Section 504 of the Rehabilitation Act of 1973 prohibits entities receiving federal funds from discriminating against otherwise qualified individuals with disabilities." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017) (citing *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310 (11th Cir. 2007)). "To establish a prima facie case of discrimination under the Rehabilitation Act, [Mulfort] must show that (1) [s]he has a disability, (2) [s]he is otherwise qualified for the position, and (3) [s]he was subjected to unlawful discrimination as a result of h[er] disability. *Id*. The third element may also be satisfied by showing "an adverse employment action, such as termination, because of [her] disability. *Boyle,* 866 F.3d at 1289 (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

Mulfort's allegations conform with Eleventh Circuit requirements. (1) She was diagnosed with a disability (post-partum depression) (Doc. 9; ¶¶ 26-29, 99). (2) Mulfort was able to perform the essential functions of her role with a reasonable accommodation, making her qualified for her position.  (Doc. 9; ¶¶ 27; 29). (3) Finally, she was terminated because of her post-partum depression diagnosis (Doc. 9; ¶¶ 35-38, 100).

**Count XII – Rehabilitation Act (Retaliation) Against Defendant State Attorney's Office**

Like the Americans with Disabilities Act, "the Rehabilitation Act also prohibits retaliating against an employee for engaging in protected activity. *Owens*

*v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1337 (11th Cir. 2022) (citing 29 U.S.C. § 794(a)). "The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the Americans with Disabilities Act . . . ." *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011) (citations omitted). "Claims for discrimination and retaliation under the Rehabilitation Act are governed under the same standard applicable to those brought under the Americans with Disabilities Act ("ADA"), such that cases decided under one act as precedent for cases decided under the other." *Thatcher v. Dep't of Veterans Affs.*, No. 8:17-CV-3061-T-AEP, 2020 WL 2838849, at *9 (M.D. Fla. June 1, 2020), *aff'd*, No. 20-12476, 2021 WL 4940824 (11th Cir. Oct. 22, 2021) (citations omitted). Given the similarity of the anti-retaliation provisions, "courts assess retaliation claims brought under the Rehabilitation Act and the ADA under the same framework used in assessing Title VII retaliation claims." *Id.* at *15 (citations omitted).

  To establish a retaliation claim under the Rehabilitation Act, Mulfort "must demonstrate that (1) she engaged in a statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) a causal link exists between the materially adverse employment action and her protected expression." *Id.* at *16. Mulfort pleads all requisite elements.

  (1) In early August 2023, Mulfort engaged in protected activity by requesting a reasonable accommodation in the form of leave following her post-partum depression diagnosis. (Doc. 9; ¶¶ 26, 29, 105). "An employee participates

16

in protected expression . . . when he makes a request for a reasonable accommodation." *Oirya*, 2024 WL 1462500, at *7 (citations omitted).

(2) Shortly thereafter, she was terminated effective August 9, 2023, (Doc. 9; ¶¶ 35-38, 107), which is undeniably an adverse employment action. *See Freytes-Torres*, 270 F. App'x at 894.

(3) Lastly, Defendant retaliated against Mulfort for engaging in protected activity by terminating her employment shortly after she requested leave. (Doc. 9; ¶¶ 35-38, 107). Again, the close temporal proximity between the protected activity and the termination—both events occurring at the beginning of August 2023—is very close and raises the reasonable inference of a causal connection. *See Thomas*, 506 F.3d at 1364.

## **CONCLUSION**

Defendants repeatedly focus on extraneous documents and details, but fall short of illustrating how the factual allegations are legally deficient. Mulfort respectfully requests that the Court deny Defendants' Motion to Dismiss. Alternatively, Mulfort requests that the Court grant her leave to amend and any other relief this Court deems proper.

Dated this 16th day of October 2024.

Respectfully submitted,

_/s/ Luis A. Cabassa_

**LUIS A. CABASSA**
Florida Bar Number: 0053643
**HANNAH E. HORR**
Florida Bar Number: 116011
**Wenzel Fenton Cabassa, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Direct Dial: 813 379-2565
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: gdesane@wfclaw.com
**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of October, 2024, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_/s/ Luis A. Cabassa_

**LUIS A. CABASSA**